**LOCKHEED MARTIN CORPORATION, as successor to Martin Marietta Corporation and Martin Marietta Technologies, Inc. and affiliated corporations, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 99–5039.

United States Court of Appeals, Federal Circuit.

April 26, 2000.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, of Washington, DC, argued for plaintiff-appellant. With him on the brief was Thomas W. Winland. Of counsel on the brief was Daniel J. King, King & Spalding, of Atlanta, Georgia. Of counsel were Mark M. Maloney, and Kimberly S. Piar, King & Spalding.

Charles Bricken and Stuart J. Bassin, Attorneys, Tax Division, Appellate Section, Department of Justice, of Washington, DC, argued for defendant-appellee. With them on the brief were Loretta C. Argrett, Assistant Attorney General; and Jonathan S. Cohen, Attorney.

Herbert L. Fenster, McKenna & Cuneo, L.L.P., of Washington, DC, for amicus curiae The Chamber of Commerce of the United States of America. With him on the brief was David Kasanow.

Michael F. Solomon, Ivins, Phillips & Barker, Chartered, of Washington, DC, for amici curiae Hughes Electronics Corporation and Raytheon Company. Of counsel on the brief were Philip C. Swain, Foley, Hoag & Eliot LLP, of Boston, Massachusetts; Michael W. Sales, Hughes Electronic Corporation, of El Segundo, California;

and Glenn H. Lenzen, Jr., Raytheon Company, of Lexington, Massachusetts.

Alexander Zakupowsky, Jr., Miller & Chevalier, Chartered, of Washington, DC, for amicus curiae Aerospace Industries Association of America, Inc. With him on the brief were Alan I. Horowitz, and Lynda Troutman O'Sullivan.

Before PLAGER, LOURIE, and BRYSON, Circuit Judges.

LOURIE, Circuit Judge.

Lockheed Martin Corporation appeals from the decisions of the United States Court of Federal Claims (1) denying Lockheed Martin's attempt to introduce late-filed expenses in its tax refund suit, *see Lockheed Martin Corp. v. United States,* 39 Fed. Cl. 197 (1997), and (2) granting the government's motion for summary judgment that Lockheed Martin was not entitled to a tax credit refund for certain research expenses, *see Lockheed Martin Corp. v. United States,* 42 Fed. Cl. 485 (1998). Because the court correctly denied Lockheed Martin's "motion for pretrial order clarifying the scope of the complaint" but erroneously determined that Lockheed Martin did not retain "substantial rights in its research" under the contracts at issue, we affirm-in-part, reverse-in-part, and remand.

## BACKGROUND

Lockheed Martin was a party to numerous fixed-price contracts with the United States during the 1982 through 1988 tax years.[1] In 1991 Lockheed Martin filed refund claims for tax years 1984 through 1988. The tax refund claims asserted entitlement to research credits under the "credit for increasing research activities" provision of the Internal Revenue Code, I.R.C. § 44F (1982)[2] and I.R.C. § 41(d) (1988),[3] based on certain research ex-

penses that it incurred from 1982 to 1988 in performance of those contracts. Each 1120X tax form filed by Lockheed Martin stated as follows:

The credit for increasing research activities has been increased to reflect:

(1) research expenses incurred by Taxpayer pursuant to fixed price contracts with customers where the Taxpayer's right to payment under such contracts is contingent upon the success of the research [See IRS Reg. Sec. 1.41–5(d)(1) ]; and

(2) additionally qualifying wages for holiday pay, vacation pay, sick pay, military leave and jury duty that were inadvertently not included as part of W–2 wages of persons performing qualified research.

Attached to each of Lockheed Martin's refund claims was a Form 6765 "Credit for Increasing Research Activities," which stated the amounts that Lockheed Martin spent during the applicable year on different categories of research expenses— wages, supplies, rental and leasing costs, contract expenses, and payments to qualified research organizations for basic research. Also attached to each claim was a summary of how those research costs were allocated among different Lockheed Martin divisions. For example, on Form 6765 for the 1986 tax year, Lockheed Martin stated that it spent $16,540,427 on supplies used in conducting qualified research in 1986. The summary apportioned that amount among Martin Marietta Corp. ($16,472,519), Martin Marietta Aluminum Properties Inc. ($0), Martin Marietta Measurement Systems, Inc. ($5,008), Martin Marietta Information Technology Inc. ($62,900), and Gamma Monolithics Partnership ($0). The summaries similarly apportioned other categories of expenses

---

1. Lockheed Martin Corporation is the successor in interest to Martin Marietta Corporation, Martin Marietta Technologies, Inc., and affiliated companies. The predecessor companies were the named parties to the contracts and tax refunds involved in this case.

For simplification we refer to them collectively as Lockheed Martin.

2. All references to § 44F are to the 1982 I.R.C.

3. All references to § 41 are to the 1988 I.R.C.

among the divisions. Lockheed Martin did not submit any evidence to support its claims until the claims were examined by the I.R.S. Lockheed Martin then produced schedules of specific expenses that it incurred during performance of the 13 largest contracts underlying its refund claims. Both parties refer to these schedules as the "Green Books." These schedules included approximately 80% of the total expenses underlying the refund claims.

The IRS disallowed the refund claims on the ground that the research expenses did not qualify for the tax credit. The IRS stated that the research performed under the contracts was not "qualified research" under §§ 44F(d) and 41(d) because, under Treasury Reg. § 1.41–5(d) (1989), the research was "funded" by the government. The IRS concluded that the research was "funded" because payment was not contingent on the success of the research and Lockheed Martin did not retain "substantial rights" in the research.

Lockheed Martin appealed this decision to the Court of Federal Claims. During the course of discovery on the Low Altitude Navigation and Targeting InfraRed for Night ("LANTIRN") contract, Lockheed Martin learned of additional research expenses that it had not included in its Green Books. It filed a "motion for pretrial order clarifying the scope of complaint" asking the court to order the government to consider evidence regarding these expenses and any other expenses uncovered during discovery.

The Court of Federal Claims denied the motion, reasoning that the submission to the IRS of a tax refund claim stating detailed legal and factual grounds for the refund is a prerequisite to bringing a tax refund suit, and that Lockheed Martin could not substantially vary either the legal or factual bases for its refund claim at trial. *See Lockheed Martin,* 39 Fed. Cl. at 200–02. The court held that Lockheed Martin's introduction of additional expenses would constitute a substantial variance of the factual basis for its refund claims because those expenses could have

constituted a separate basis for recovery had they been timely filed. *See id.* at 202–03.

The parties both subsequently moved for summary judgment on the question whether, under Treasury Reg. § 1.41, Lockheed Martin retained "substantial rights" in the research for which it claimed qualified research expense tax credits. The parties agreed to have the issue resolved by reference to the contracts governing four programs that represented approximately 65% of the expenses claimed, and to extend the court's determination whether Lockheed Martin retained substantial rights under those contracts, *pro rata,* to all of the contracts in the suit. The four programs were the LANTIRN, Small Intercontinental Ballistic Missile ("SICBM" or "Midgetman"), Supersonic Low Altitude Target ("SLAT"), and Titan IV programs. The parties refer to these as the "Major Programs."

The contract provisions setting forth the parties' rights in the results of Lockheed Martin's research were substantially the same for each of the Major Programs. The SICBM, Titan IV, and SLAT programs were governed by a single contract. The LANTIRN program was governed by both Full Scale Engineering Development (FSED) and Production contracts. Except for the LANTIRN Production contract, each contract incorporated by reference substantially similar standard regulatory clauses regarding patent rights. Each of the Major Program contracts also (1) incorporated by reference standard regulatory clauses regarding rights in technical data and computer software; (2) contained security classification guidelines for certain information; and (3) incorporated by reference substantially similar regulatory clauses regarding the government's recovery of nonrecurring costs on commercial sales.

The Court of Federal Claims held that Lockheed Martin did not retain substantial rights in its research under any of the Major Program contracts. *See Lockheed Martin,* 42 Fed. Cl. at 500. The court so

# 1370

concluded because (1) the government had an unlimited right to use Lockheed Martin's technical data and disclose it to third parties, which "considerably diminished, if not destroyed" the value of Lockheed Martin's right to use its research results and hence its competitive advantage; (2) Lockheed Martin had to seek prior approval from the State Department before entering into licensing agreements or discussing with other customers technical information not in the public domain; (3) the government had veto power over Lockheed Martin's right to file patent applications and could require Lockheed Martin to transfer title to a subject invention if Lockheed Martin failed to file a patent application within a specific period of time; and (4) the recoupment provision required Lockheed Martin to pay the government for the right to use its research results. *See id.* at 498–500. The court also held that Lockheed Martin lacked substantial rights in its research for the further reason that particular statutory provisions restricted Lockheed Martin's exports. *See id.* at 498. The court characterized the profits that Lockheed Martin received on private sales of related technology as "incidental benefits." *See id.* at 499.

Lockheed Martin timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (1994).

## DISCUSSION

### A. *Claim Variance*

The first issue that Lockheed Martin raises in its appeal is whether the court erred in denying its motion to order the government to consider additional research expenses not discovered until trial. Specifically, Lockheed Martin argues that the introduction of additional expenses would not substantially vary its tax refund claims because the legal basis, the class of contract, and the categories of expenses underlying the claims remained unchanged. Lockheed Martin argues that since its claims were written broadly and put the government on notice that it was claiming research credits for wages, sup-

plies, contract research, and rent expenses made pursuant to its fixed-price contracts, it should be able to introduce any such expenses without varying the claims' factual basis. Lockheed Martin submits that the court improperly narrowed its claim to the expenses listed in the Green Books, which simply constituted evidence for proving its tax claims and did not constitute the claims.

The government responds that the court correctly rejected Lockheed Martin's introduction of additional expenses because those expenses would substantially vary the factual basis for its tax claims. The government argues that even though Lockheed Martin wrote its refund claims broadly, there is no dispute that it predicated its refund claims on specific expenses which together formed the factual basis for the claims. The government contends that, by definition, later-discovered expenses cannot constitute the factual predicate for an earlier tax claim. Thus, the government reasons, Lockheed Martin cannot introduce additional expenses without varying the factual basis for the claims. The government also points out that when Lockheed Martin submitted the Green Books to the government for auditing, it represented to the government that, with respect to thirteen of the contracts, those books contained all of the expenses upon which its research credit claims were predicated. Thus, the government argues, the expenses listed in the Green Books constitute the factual basis underlying Lockheed Martin's refund claims for those contracts and Lockheed Martin cannot now add expenses without varying that basis.

■ The operative facts are not in dispute. The proper application of the tax laws to an undisputed set of operative facts is a question of law, over which we exercise plenary review. *See Washington Energy Co. v. United States,* 94 F.3d 1557, 1560 (Fed.Cir.1996); *Kane v. United States,* 43 F.3d 1446, 1448 (Fed.Cir.1994).

We agree with the government that the court correctly rejected Lockheed Martin's attempt to introduce research expenses that it did not discover until after it filed suit in the Court of Federal Claims. A taxpayer may not sue the United States for the recovery of income taxes unless it has timely filed a refund claim at the Internal Revenue Service in the manner prescribed by regulation. *See* I.R.C. § 7422(a) (1994). The regulations require that the taxpayer submit with its tax refund claim the supporting evidence necessary to prove its claim. *See* Treasury Reg. § 301.6402–2(a) (as amended in 1977). The regulations further provide that:

> No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of the period. The claim must set forth in detail each ground upon which a credit or a refund is claimed and in facts sufficient to apprise the Commissioner of the exact basis thereof.

*Id.* § 301.6402–2(b)(1). This regulation distinguishes between the ground for the claim—that is, the legal theory upon which the refund is claimed—and facts "sufficient to apprise the Commissioner of the exact basis thereof." *See Burlington N. Inc. v. United States*, 231 Ct.Cl. 222, 684 F.2d 866, 870 (1982). Courts have long interpreted § 7422(a) and Treasury Reg. § 301.6402–2(b)(1) as stating a "substantial variance" rule which bars a taxpayer from presenting claims in a tax refund suit that "substantially vary" the legal theories and factual bases set forth in the tax refund claim presented to the IRS. *See Cook v. United States*, 220 Ct.Cl. 76, 599 F.2d 400, 406 (1979). With regard to the legal component of the "substantial variance" rule, "[a]ny legal theory not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated." *Burlington*, 684 F.2d at 868. The taxpayer similarly may not substantially vary at trial the factual bases raised in the refund claims presented to the IRS. *See Ottawa Silica Co. v. United States*, 699 F.2d 1124, 1138 (Fed.Cir.1983). The substantial variance rule (1) gives the IRS notice as to the nature of the claim and the specific facts upon which it is predicated; (2) gives the IRS an opportunity to correct errors; and (3) limits any subsequent litigation to those grounds that the IRS had an opportunity to consider and is willing to defend. *See id.* at 1138–40; *Union Pac. R.R. v. United States*, 182 Ct.Cl. 103, 389 F.2d 437, 442 (1968). Had Lockheed Martin complied with this regulation and submitted a detailed listing of particular expenses to the I.R.S. with its tax refund claim, the exact factual basis of its tax refund claim would have been provided and there would be no dispute that Lockheed Martin could not vary from that list of expenses. *See Armstrong Rubber Co. v. United States*, 207 Ct.Cl. 1023 (1975) (holding that substantial variance rule prohibited a taxpayer from adding assets to the list that formed the basis for its refund claim because the claim was never amended to include those assets).

We agree with the government that the introduction of additional expenses would constitute a substantial variance of the factual basis of Lockheed Martin's claims. Lockheed Martin's claims were written broadly, but there can be no dispute that each of its tax refund claims was based on a finite group of expenses. Lockheed Martin predicated its claims on particular research expenses that it believed entitled it to a tax credit. To arrive at a research credit total for each year, Lockheed Martin summed those expenses. Even though the details of the expenses were not provided to the IRS, they constituted the factual basis for its claims. There is no dispute that the expenses that Lockheed Martin attempted to introduce were not discovered until after it filed suit in the Court of Federal Claims, several years after the claims were filed with the IRS. They were not among the expenses upon which Lockheed Martin predicated its claim. The substantial variance rule pro-

hibits Lockheed Martin from now introducing those expenses. The court therefore did not err by denying Lockheed Martin's request that the court consider expenses discovered after the refund claims were filed.

For these reasons we affirm the Court of Federal Claims' denial of Lockheed Martin's "motion for pretrial order clarifying the scope of complaint."

## B. *Substantial Rights*

The second issue that Lockheed Martin raises is whether the court erred in holding on summary judgment that Lockheed Martin was not entitled to a research expense tax credit because it did not retain "substantial rights in its research" under the four Major Programs as required under Treasury Reg. § 1.41.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." United States Court of Federal Claims Rule 56. We review a grant of summary judgment by the Court of Federal Claims *de novo* to determine whether the summary judgment standard has been correctly applied. *See Winstar Corp. v. United States,* 64 F.3d 1531, 1539 (Fed.Cir.1995) (en banc), *aff'd* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996). Summary judgment is particularly appropriate here. There are no material facts in dispute. The only issues are legal—whether the Court of Federal Claims properly construed the relevant provisions of the Internal Revenue Code, Treasury regulations, and Major Program contracts, and applied the correct law.

Lockheed Martin argues that the proper test for determining whether a researcher retains "substantial rights" in its research is whether the research contract gives the researcher the right to use the results of its research in its business without paying for that right, irrespective of whether it retains the right to control the use of the research by others. Lockheed Martin submits that it meets this test because,

under the Major Program contract provisions, it retained the right to use the research results in its business. Lockheed Martin argues that the court gave undue weight to the government's nonexclusive rights in Lockheed Martin's research, improperly speculated on Lockheed Martin's competitive advantage, incorrectly analogized the concept of "substantial rights" to patent rights, and erroneously characterized Lockheed Martin's rights in its research as "incidental benefits." Lockheed Martin further contends that the court erroneously considered the government's power to withhold the grant of a patent for national security reasons, and its power to restrict foreign technology and software sales by refusing an export license, because those powers exist outside of the contracts. Lockheed Martin also asserts that the court erroneously construed the recoupment clause as a payment for use. Lastly, Lockheed Martin contends that if the treasury regulation were interpreted to require the researcher to obtain exclusive rights to its research in order to have substantial rights, then the regulation would be an invalid construction of the statute because the statute does not contemplate that the researcher would obtain exclusive rights to its research.

The government responds that the court correctly held that Lockheed Martin did not retain substantial rights in its research. The government concedes that Lockheed Martin retained the right to use and disclose the results of its research, but contends that that right does not rise to the level of a "substantial" right. The government primarily argues that Lockheed Martin's right to use its research is not a "substantial right" because it had to pay to use the research under the contracts' recoupment provision. The government also argues that Lockheed Martin's right to use its research was not a substantial right because the government had the right to use Lockheed Martin's technical data and computer software, and to disclose that information to third parties, and Lockheed Martin did not have the right to

prevent the government from doing so. It also asserts that the government had the right to use or sell any patented invention resulting from the research. The government also argues that top secret security provisions and export control laws further restricted sales of products resulting from Lockheed Martin's research. The government contends that because of all of these restrictions, Lockheed Martin's rights to use and disclose its research had "no practical value."

■ We agree with Lockheed Martin that it retained substantial rights in its research results and that it is entitled to the tax credit. We start first with the statute: While the definition of qualified research in the I.R.C. does not refer to the concept of "substantial rights in research," it excludes from its definition research that is "funded ... by another person." I.R.C. §§ 44F(d), 41(d).

The "credit for increasing research activities" was originally numbered § 44F in the I.R.C. The Tax Reform Act of 1984, Pub.L. No. 98–369, §§ 471(c), 474(i)(1), 98 Stat. 494, 826, 831–32, renumbered § 44F as § 30. The Tax Reform Act of 1986, Pub.L. No. 99–514, § 231, 100 Stat. 2085, 2173–80, renumbered § 30 as § 41 and substantially amended the provision. Since the credit provision was amended during the tax period at issue in this case (1982–88), we must interpret both the original (§ 44F) and the amended (§ 41) provision. The relevant aspects of § 41 are substantially similar to § 44F, however, and we reach the same conclusions with respect to both sections.

The original "credit for increasing research activities" provision, § 44F, provided as follows:

General rule

There shall be allowed as a credit against the tax imposed by this chapter for the taxable year an amount equal to 25 percent of the excess (if any) of—

(1) the *qualified research expenses* for the taxable year, over

(2) the base period research expenses.

§ 44F(a) (emphasis added). The amended provision, § 41, similarly allows a tax credit for increased "qualified research expenses," but limits the tax credit to 20 percent of the increase. *See* § 41(a).

Sections 44F and 41F both define "qualified research." Section 44F defines "qualified research" as follows:

Qualified research

For purposes of this section the term 'qualified research' has the same meaning as the term research or experimental has under section 174, except that such term shall not include—

(1) qualified research conducted outside the United States,

(2) qualified research in the social sciences or humanities, and

(3) qualified research *to the extent funded* by any grant, contract, or otherwise by another person (or any governmental entity).

I.R.C. § 44F(d) (emphasis added). As noted earlier, it excludes "funded" research. Section 41 similarly excludes "funded" research:

Qualified research defined.—For purposes of this section—

. . .

(4) Activities for which credit not allowed.—The term "qualified research" shall *not* include any of the following:

· · · · ·

(H) Funded research.—Any research *to the extent funded* by any grant, contract, or otherwise by another person (or any governmental entity).

I.R.C. § 41(d) (emphasis added). These definitions introduce the concept of "funded," although neither § 44F nor § 41 defines "funded." The regulations, in turn, connect the concept of funded to substantial rights. The regulations state as follows:

(d) *Research funded by any grant, contract or otherwise* —(1) *In general.* Re-

search does not constitute qualified research to the extent it is funded by any grant, contract, or otherwise by another person (including a governmental entity). All agreements (not only research contracts) entered into between the taxpayer performing the research shall be considered in determining the extent to which the research is funded. *Amounts payable under any agreement that are contingent on the success of the research and thus considered to be paid for the product or result of the research [ ] are not treated as funding. ...*

(2) *Research in which taxpayer retains no rights.* If a taxpayer performing research retains no substantial rights in research under the agreement providing for the research, the research is treated as fully funded ..., and no expenses paid or incurred by the taxpayer in performing the research are qualified research expenses. For example, *if the taxpayer performs research under an agreement that confers on another person the exclusive right to exploit the results of the research, the taxpayer is not performing qualified research because the research is treated as fully funded* under this paragraph (d)(2). Incidental benefits to the taxpayer from performance of the research (for example, increased experience in a field of research) do not constitute substantial rights. If a taxpayer performing research for another person retains no substantial rights in the research and if the payments to the researcher are contingent upon the success of the research, neither the performer nor the person paying for the research is entitled to treat any portion of the expenditures as qualified research expenditures.

(3) *Research in which the taxpayer retains substantial rights —(i) In general. If a taxpayer performing research for another person retains substantial rights in the research under the agree-*

*ment providing for the research, the research is funded to the extent of the payments (and the fair market value of any property) to which the taxpayer becomes entitled by performing the research. A taxpayer does not retain substantial rights in the research if the taxpayer must pay for the right to use the results of the research. ...*

Treasury Reg. § 1.41–5(d) (emphasis added).

These regulations imply two scenarios in which the taxpayer's research will be considered "funded" by another person. The first is when the parties agree that payment shall not be contingent[4] on the success of the research. If the taxpayer's research will be paid for by another person whether or not the research succeeds, the research is funded and the expenditures are not entitled to the tax credit. In contrast, if the taxpayer will be paid only if it succeeds in its research for the other party, the taxpayer's research will not be considered funded. *See Fairchild Indus., Inc. v. United States,* 71 F.3d 868, 873 (Fed.Cir.1995). "The statute is designed so that those who will bear the risk of financial loss can include the tax credit in their calculation of investment risk." *Id.* at 874.

▪ The second scenario in which a taxpayer's research can be considered "funded" or "paid for" is when the taxpayer agrees to perform research for another person without retaining "substantial rights" to its research—when the person for whom the research is performed has "the exclusive right to exploit the results of the research" and the taxpayer "must pay for the right to use the results of the research." *See* Treasury Reg. § 1.41(5)(d)(2) and —(3). If the taxpayer does not have the right to use or exploit the results of the research, its expenditures are not entitled to the tax credit

---

**4.** Whether or not the research was funded because payment was contingent on the success of the research has not been raised as an issue in this appeal. It is unclear from the briefs whether the government has conceded that payment was contingent on the success of the research or whether it has withdrawn this ground for the claims' disallowance.

regardless whether there is an agreement that the research will be paid for only if successful, and regardless whether the taxpayer receives some "incidental benefit" such as increased experience. On the other hand, it follows that as long as exclusive rights are not vested in "another person," the taxpayer may retain substantial rights. Treasury Reg. § 1.41–5(d) thus implements the statute's purpose of giving a tax credit only to those taxpayers who themselves take on the financial burden of research and experimentation to develop new techniques, equipment, and products that they can use in their businesses.

This interpretation is supported by Treasury Reg. § 1.41–2(a), which ties the concept of "substantial rights" to use. That subsection states in relevant part as follows:

> (a) *Trade or business requirement —* (1) *In general.* An in-house research expense of the taxpayer or a contract research expense of the taxpayer is a qualified research expense only if the expense is paid or incurred by the taxpayer in carrying on a trade or business of the taxpayer.... *[A] contract research expense of the taxpayer is not a qualified research expense if the product or result of the research is intended to be transferred to another in return for license or royalty payments and the taxpayer does not use the product of the research in the taxpayer's trade or business.*
>
> \* \* \* \* \* \*
>
> (3) *Research performed for others —*(i) *Taxpayer not entitled to results.* If the taxpayer performs research on behalf of another person and *retains no substantial rights in the research,* that research shall not be taken into account by the taxpayer for purposes of section 41. *See § 1.41–5(d)(2).*
>
> (ii) *Taxpayer entitled to results.* If the taxpayer in carrying on a trade or business performs research on behalf of other persons but *retains substantial rights in the research,* the taxpayer shall take otherwise qualified expenses for that research into account for purposes of section 41 to the extent provided in § 1.41–5(d)(3).

Treas. Reg. § 1.41–2(a). This regulation requires that the taxpayer *use* the results of its research in its trade or business to fulfill the credit's "trade or business" requirement and makes specific reference to Treasury Reg. § 1.41–5(d), the funding provision discussed above. This regulation supports the conclusion that a taxpayer that retains the right to use the research results without paying for it has "substantial rights in research."

We therefore must reject the government's argument that "substantial rights" only includes the scenario in which the taxpayer retains the right to exclude others (including the government) from its research and in which other parties do not also have the right to use or disclose the taxpayer's research, including patented inventions. Nothing in the statute or the regulations supports such an interpretation. The right to use the research results, even without the exclusive right, is a substantial right.

The trial court relied in part on an analogy to patent cases. However, that analysis is unsound. The patent cases deal with the concept of "all substantial rights," and whether any agreement transferring such rights amounts to an assignment, as opposed to a license. *See, e.g., Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,* 944 F.2d 870 (Fed.Cir.1991). We are not dealing here with a patent license, but with a tax statute, with different language and different concepts. The language of the statute and regulations do not require the retention of *all* substantial rights. The issue is only what "substantial rights" means for purposes of the "credit for increasing research activities" provision.

We similarly reject the argument that the determination whether Lockheed Martin retained "substantial rights" to its research can be found by reference to export control laws and top secret classifications;

they are also irrelevant because they are outside of the research agreements. The determination whether Lockheed Martin retained "substantial rights" must be made by reference to the Major Program contracts alone. The regulation's focus on the taxpayer's right under the research agreements makes it clear that the determination whether the taxpayer had the right to use the results of its research without paying for that right must be determined by reference to the research agreements. The government concedes that the contract provisions give Lockheed Martin the right to use its research in its business. Such a right is clearly substantial. It permits Lockheed Martin to manufacture and sell up-to-date products meeting the needs of its customers. We do not agree with the trial court's conclusion that Lockheed Martin's rights were "considerably diminished, if not destroyed." The relevant inquiry is whether, under the terms of the contracts, Lockheed Martin's right to use its research without paying for it is a substantial right. It clearly is.

The government's final argument that Lockheed Martin did not retain substantial rights in its research under Treasury Reg. 1.41–5(d)(3) is that the contracts' recoupment provision, entitled "Recovery of Nonrecurring Costs on Commercial Sales," [5] requires Lockheed Martin to pay for that right.

We agree with Lockheed Martin that, under this provision, it retained the right to use its research results in its business without paying for that right. That contract provision reads in pertinent part as follows:

Recovery of Nonrecurring Costs on Commercial Sales

(b) In the event the Contractor intends to enter into domestic or foreign commercial sales for items in this contract, or essentially similar items, or enter into license or technical assistance

agreements for the technology developed under this contract, he shall promptly notify the Contracting Officer (or the original DOD Contracting Office in the event the contract is closed) to obtain the applicable nonrecurring recoupment charge.

(1) The Contractor agrees that, with respect to (2) below, he will:

(i) Reimburse the U.S. Government for a fair share of U.S. Government expenditures for nonrecurring costs applicable to the items, or, in the case of technology, the Government's proportionate share of the fair market price of the technology for the commercial customer. . . .

(ii) Reimburse a fair share of nonrecurring costs related to a special feature or product paid by a foreign government or international organization under a U.S. Government Foreign Military Sales case when the Contractor enters into a commercial sale or license agreement for the same or similar special feature or product.

(2) The Government will require reimbursement under the provisions of this clause when:

(i) The Government's investment in research, development, test, and evaluation (RDT & E) equals or exceeds $5 million.

(ii) The Government's investment in nonrecurring production costs equals or exceeds $5 million.

(iii) A foreign government's RDT & E and nonrecurring production costs for a special feature or product equal or exceed $5 million (when requested under an FMS case and agreed to by the U.S. Government).

(iv) Reimbursement for investment costs below the thresholds in (i) and (iii) are specifically approved by the Secretary of Defense or his designee.

---

**5.** The Titan IV and SLAT contracts incorporate 32 C.F.R. § 7–104.64 (Feb.1980). The LANTIRN FSED contract incorporates 32 C.F.R. § 7–104–64 (Sept.1979). The LAN-

TIRN Production and SICBM contracts incorporate 48 C.F.R. § 252.235–7002 (Feb.1980). The relevant language of these regulations is identical.

(3) For each commercial sale of the item, the amount to be reimbursed to the U.S. Government for nonrecurring costs shall be determined by dividing the total nonrecurring costs incurred and project to be incurred by the total production quantity of the item, past and projected, including the production quantity for the Department of Defense [ ], and multiplying the result by the quantity involved in each commercial sale or license agreement. . . .

(4) For each commercial sale of technology, these factors will be considered in determining fair market price: (i) the costs incurred by the Department of Defense in developing the technology being considered for sale; (ii) the costs that would be incurred by the buyer in independently developing the technology; and (iii) the estimated dollar value of the product(s) that will be produced by the buyer upon transfer of the technology. In the case of sale or license of technology to a domestic organization, the fair market price will be the lower of either a fair share of the DoD investment cost identified to the development of the technology or a proportionate share of the fair market price for the technology based on demand or the potential monetary return on investment. For sales or licenses of technology to foreign commercial customers, this price will be the greater of these two alternatives. . . .

  \*   \*   \*   \*   \*   \*

(f) Notwithstanding the provisions of the clauses of this contract entitled "Patent Rights—Retention by the Contractor" and "Rights in Technical Data and Computer Software," the Contractor agrees that his rights to enter into production for commercial sales of the items or essentially similar items, or to sell or license related technology, are expressly contingent upon compliance with the provisions of this clause, provided that the Secretary of Defense or his designee may waive the Government's rights under this clause, in whole or in part, whenever he determines that such action would be in the best interests of the Government.

The purpose and application of this provision is quite straightforward. As its title and text suggest, it is a cost recovery, or reimbursement, provision. Its purpose is to require the contractor to bear a portion of the government's nonrecurring, or one-time, costs relating to the research, development, testing, and production of products that the contractor wishes to sell to third parties. In contrast, a provision requiring payment for the right to use is generally a royalty based on sales of a product, not on cost of its research and development. Such payment is generally a percentage or per item royalty, rather than a cost reimbursement provision such as exists here.

This recoupment provision, by its own terms, only applies when the contractor intends to sell items or sell or license technology developed for the government to third parties. It does not otherwise restrict the contractor's use of the items or technology. We therefore disagree with the government that, under the recoupment provisions of the Major Program contracts, Lockheed Martin agreed to pay for the right to use the results of its research. Only Lockheed Martin's obligation to reimburse costs when it commercially sells items or sells or licenses "related technology" is involved. Lockheed Martin's right to make the subject products, essentially similar products, or related technology, and to use them in its own business, is not restricted. Even the right to sell is not precluded if reimbursement is made.

The recoupment clause also does not affect Lockheed Martin's right to make and use patented inventions or to exclude unauthorized third parties from making, using, or selling such inventions. The Titan IV, LANTIRN FSED, and SLAT contracts' "Patent Rights Clause—Retention by the Contractor" reads in relevant part as follows:

 (a) *Definitions*

(1) *"Subject Invention"* means any invention or discovery of the Contractor conceived or first actually reduced to practice in the course of or under this contract....

\*     \*     \*     \*     \*     \*

(b) *Allocation of principal rights*

(1) The Contractor may retain the entire right, title, and interest throughout the world or any country thereof in and to each Subject Invention disclosed [ ], subject to the rights obtained by the Government in paragraph (c) of this clause....

\*     \*     \*     \*     \*     \*

(c) *Minimum rights acquired by the Government.* With respect to each Subject Invention to which the Contractor retains principal or exclusive rights, the Contractor:

(i) hereby grants to the Government a nonexclusive, nontransferable, paid-up license to make, use and sell each Subject Invention throughout the world.... [6]

The SICBM contract's "Patent Rights Clause—Retention by the Contractor" clause is substantially similar.[7] These provisions plainly leave Lockheed Martin rights to all patents and inventions, subject to the government's right to a nonexclusive, nontransferable, paid-up license. The recoupment clauses' obligations of reimbursement on sales and licenses of contract products and technology does not affect Lockheed Martin's right to sue to enjoin unauthorized third parties from making, using, and selling "Subject Inventions" and does not affect Lockheed Mar-

tin's right to make and use the "Subject Inventions" itself.

The recoupment clause similarly does not restrict Lockheed Martin's right to make and use technical data and computer software. The contracts' "Rights in Technical Data and Computer Software" provision, like the patent provision, gives the government broad rights, but not all rights. It gives the government the unlimited right to use, duplicate, and disclose to others a wide range of technical data, computer software, computer databases, and other information developed by Lockheed Martin in the course of the contract, and the right to permit others to do so.[8] This provision does not restrict Lockheed Martin's right to use this information itself or disclose it to others. Read in conjunction with the recoupment provision, the only restriction imposed on Lockheed Martin relates to its obligation of reimbursement when it wishes to sell or license some of this information if the information constitutes a contract item, an "essentially similar item" or "related technology." The fact that others may have access to the data and software does not mean that Lockheed Martin loses its rights therein. The right to use is not a zero-sum game. Lockheed Martin still retains substantial rights in the subject matter even when others do as well.

In sum, under the Major Program contracts, Lockheed Martin retained the right to use the results of its research in its business without paying for that right and therefore retained "substantial rights" in its research under Treasury Reg. §§ 1.41–2(a) and 1.41–5(d). Because Lockheed retained "substantial rights" to its research, the research performed under the Major

---

**6.** The Titan contract incorporates 32 C.F.R. § 7–302.23(b) (Jan.1984). The LANTIRN FSED contract incorporates 32 C.F.R. § 7–302.23(b) (Aug.1977). The SLAT contract incorporates 32 C.F.R. § 7–302.23(b) (July 1981). The relevant language of these provisions is identical.

**7.** The SICBM contract incorporates 48 C.F.R. § 52.227–12 (Apr.1984).

**8.** The Titan IV and SLAT contracts incorporate 32 C.F.R. § 7–104.9(a) (May 1981). The LANTIRN FSED contract incorporates 32 C.F.R. § 7–104.9(a) (Mar.1979). The LANTIRN and SICBM contracts incorporate 48 C.F.R. § 52.227–7013 (May 1981). The relevant language of these provisions is substantially similar.

Program contracts did not fall under the "funded" exclusion of the "credit for increasing research activities" statute, §§ 44(d) and 41(d). The Court of Federal Claims thus erred in concluding otherwise.

## CONCLUSION

The Court of Federal Claims correctly denied Lockheed Martin's "motion for pretrial order clarifying the scope of the complaint"; that decision is affirmed. However, the court erroneously granted the government's motion for summary judgment that Lockheed Martin did not fall within the "funded" exclusion of the "credit for increasing research activities" statute. The court should have granted summary judgment in Lockheed Martin's favor. That decision is therefore reversed. The case is remanded for further proceedings consistent with this opinion.

AFFIRMED–IN–PART, REVERSED–IN–PART, and REMANDED.