# United States Court of Appeals for the Federal Circuit

———————————

**ARMANDO SANDOVAL LUA, YADIRA SANDOVAL,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————

2016-1313

———————————

Appeal from the United States Court of Federal Claims in No. 1:13-cv-00095-CFL, Judge Charles F. Lettow.

———————————

Decided: December 15, 2016

———————————

SEAN H. COLON, Sean H. Colon, Inc., Woodland, CA, argued for plaintiffs-appellants.

REGINA S. MORIARTY, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by RICHARD FARBER, CAROLINE D. CIRAOLO.

———————————

Before PROST, *Chief Judge,* WALLACH and CHEN, *Circuit Judges.*

WALLACH, *Circuit Judge*.

Armando Sandoval Lua and Yadira Sandoval (together, "the Sandovals") appeal from the decision of the U.S. Court of Federal Claims ("Claims Court") granting summary judgment in favor of the United States ("Government") as to certain tax refunds claimed by the Sandovals. *See Sandoval Lua v. United States*, 123 Fed. Cl. 269, 277 (2015). We affirm.

BACKGROUND

In 2006, the U.S. Internal Revenue Service ("IRS") opened an audit of the Sandovals' tax return for the 2004 fiscal year. Appellee's Suppl. App. ("SA") 3. The IRS later expanded this audit to include the 2003 and 2005 fiscal years.[1] SA 44. The Sandovals met with an IRS agent several times and went over the proposed adjustments to the Sandovals' taxable income and, thus, outstanding tax liability owed, for the 2003 and 2004 fiscal years. SA 44−47. During this process, the Sandovals signed two key documents; in Form 4549, they waived their right to a notice of deficiency for the years 2003 and 2004, and in Form 872, they consented to extend the statute of limitations period for the 2003 fiscal year through December 31, 2008. SA 34, 36–37. The Sandovals hired representation and obtained audit reconsideration. SA 42, 46.

On reconsideration, the IRS assessed deficiencies for the 2003 and 2004 fiscal years in the amounts of $60,274 and $87,566, respectively. SA 3, 9. IRS agents thereafter continued to meet and confer with the Sandovals' representative in the following months to prepare amended returns for 2003 and 2004. SA 46–47.

---

[1] Deficiencies for the 2005 fiscal year were assessed and later disputed and resolved in the U.S. Tax Court. *See Sandoval Lua v. Comm'r*, T.C.M. (CCH) 2011-192 (2011).

The Sandovals filed amended tax returns in June 2008 for the amounts owed that they considered to be "substantially correct," and requested abatements that roughly totaled the outstanding amounts assessed but not paid. SA 58, 59−77 (2003 amended tax return), 78–95 (2004 amended tax return); *see also* SA 156 at 58:6−7 (deposition of Ms. Sandoval in which she states that they sent checks to the IRS that were "an estimate of—only of the money that we owed"). The returns included two checks and an accompanying letter from their representative stating that the checks were to be applied to the Sandovals' income tax liability for 2003 and 2004, and that "any overpayment" should be contributed to other years' outstanding amounts due. SA 58. The IRS granted a substantial portion of the requested abatements, such that these checks and overpayment credits satisfied the Sandovals' tax deficiencies in full from 2003 and 2004.[2] SA 4, 10.

In 2010, the Sandovals filed a second set of amended returns for 2003 and 2004 seeking a full refund of funds remitted plus amounts applied as overpayments from other tax years, totaling approximately $101,000. Appellants' Suppl. App. 27−69. The IRS denied the claims for refund and denied appeal in 2012. SA 140−49, 151–52.

The Sandovals filed suit in the Claims Court seeking the same relief. The Sandovals contended that they were entitled to the remitted funds on any of the following grounds: (1) they withdrew consent to assessment without notice of deficiency and never received subsequent

---

[2] The IRS applied overpayment credits of $4,390 and $1,800 to the 2003 tax year, and $1,900.37 and $718.19 to the 2004 tax year. SA 3−4, 10. By the time the IRS granted the abatements, the Sandovals had overpaid their tax liabilities for 2003 and 2004. The IRS later issued a refund of $1,123.67 to the Sandovals. SA 5.

notice; (2) the 2008 funds were applied after the three year statute of limitations for assessment had expired; or (3) the 2008 funds were given as refundable deposits rather than as tax payments. The Claims Court granted summary judgment in favor of the Government and denied a cross-motion for summary judgment, finding that as a matter of law the Sandovals were not entitled to the claimed refunds. *Sandoval Lua*, 123 Fed. Cl. at 277.

The Sandovals subsequently filed this appeal. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (2012).

### DISCUSSION

This court "review[s] the Claims Court's grant of summary judgment de novo." *Amergen Energy Co. v. United States*, 779 F.3d 1368, 1372 (Fed. Cir. 2015). Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Consol. Edison Co. v. Richardson*, 232 F.3d 1380, 1383 (Fed. Cir. 2000). "We view the evidence in a light most favorable to the non-movant . . . and draw all reasonable inferences in its favor." *SunTiger, Inc. v. Sci. Research Funding Grp.*, 189 F.3d 1327, 1334 (Fed. Cir. 1999).

### I. The Claims Court Properly Granted Summary Judgment to the Government

### A. Appellants Consented to Assessment Without Notice of Deficiency

The Sandovals primarily argue that the 2003 and 2004 assessed deficiencies are invalid because they "impliedly or constructively" withdrew their consent to waive the required notice of deficiency before the assessment, and the Government then failed to attach a notice within

the statute of limitations period.[3]  Appellants' Br. 43.  The Government counters that this is a case in which the Sandovals "effectively admitted they had not reported all of their income on their original returns for 2003 and 2004, [and now believe that] they are entitled to a refund of the additional taxes that they reported on the amended returns and remitted to the IRS in June 2008."  Appellee's Br. 25.  We agree with the Government.

The IRS generally may not assess or collect income taxes until it issues a notice of deficiency.  *See* I.R.C. §§ 6212(a), 6213(a) (2012).  Nevertheless, a taxpayer may waive the right to a notice of deficiency by signing a waiver and filing it with the IRS at any time.  *Id.* § 6213(d).  "A duly executed IRS Form 4549 is a proper waiver of the deficiency notice requirements."  *Perez v. United States*, 312 F.3d 191, 197 n.23 (5th Cir. 2002) (citation omitted); *see* Robert E. McKenzie, 1 Representation Before the Collection Division of the IRS § 3:148 (Thomson Reuters ed., 2016).  A taxpayer may withdraw the waiver and opt for the requirement of a notice of deficiency accompanying an assessment at any time until "such waiver has been acted upon by the district director and the assessment has been made in accordance with its terms . . . ."  Treas. Reg. § 301.6213-1(d) (2016).

The Sandovals claim that their request for audit reconsideration in the form of a letter and a phone call in early-November 2007 impliedly or constructively withdrew their Form 4549 waiver.[4]  Appellants' Br. 37.  In

---

[3]    The Sandovals also characterize their withdrawal of Form 4549 as "express[]" in one instance.  Appellants' Br. 21.

[4]    More specifically, the Sandovals argue that they believed that the case had been "closed" (i.e., "assessed"), such that withdrawal was no longer available on November 1, 2007 and, thus, they requested the only available

fact, there is no mention of withdrawal or waiver in either the letter or the Sandovals' description of the phone call to the IRS. SA 46, 52. The Sandovals have presented no legal authority that audit reconsideration is indicative of or synonymous with waiver withdrawal. They have offered no authority to suggest that courts have entertained a theory of constructive or implied withdrawal. Without proof of withdrawal of the waiver, the IRS properly denied the Sandovals' refund request as a matter of law.

The Sandovals further argue that the Government conceded the issue of withdrawal at a status conference held in April 2014. Appellants' Br. 37. The Claims Court succinctly stated that it "ha[d] never understood [G]overnment's counsel to have waived this issue." *Sandoval Lua*, 123 Fed. Cl. at 274 (citation omitted).

We agree with the Claims Court that the record does not support the Sandovals' argument and that there is no *genuine* dispute about this material fact. *See SunTiger, Inc.*, 189 F.3d at 1334 (explaining that no genuine dispute as to a material fact exists if no record evidence supports the nonmoving party's argument). At no point did the Government concede that the Sandovals withdrew their

---

option of reconsideration. Appellants' Br. 13−14. Because the case was not officially closed until November 26, 2007, the Sandovals also argue that the Government should have understood the reconsideration request to serve as a proxy for the withdrawal of Form 4549. *Id.* at 25, 36−37. They further claim that, without official closure of the case, "there was no support for audit reconsideration." *Id.* at 27. However, the procedures for requesting audit reconsideration are not material to this case; we have no evidence to indicate that audit reconsideration is equivalent to waiver withdrawal.

consent. We do not find that the Government conceded to a withdrawal of the waiver of notice of deficiency here.

### B. The 2004 Assessment Limitations Period Had Not Expired

The Sandovals next argue that their June 2008 remittance for the 2004 year was not timely because it did not fall within three years of the return filing. Appellants' Br. 45. Because the remittance was not timely, the Sandovals argue that they should be refunded that amount remitted. *Id.* We agree with the Claims Court's finding that there is no genuine dispute of material fact on this issue. *Sandoval Lua*, 123 Fed. Cl. at 276.

As a general rule, all taxes "shall be assessed within 3 years after the return was filed . . . ." I.R.C. § 6501(a). If a taxpayer "omits from gross income an amount properly includible therein" and "such amount is in excess of 25 percent of the amount of gross income stated in the return," the assessment and collection period is extended to six years. *Id.* § 6501(e)(1)(A)(i).

The Sandovals paid a remittance in June 2008, SA 58, and they do not dispute that their amended returns of $138,032 for fiscal year 2003 and $183,862 for fiscal year 2004 are substantially more than 25% of their originally reported returns of $52,023 and $51,848, respectively, SA 14, 24 (adjusted gross incomes originally reported), 59, 78 (adjusted gross incomes as amended). The Sandovals also have offered no evidence to suggest that I.R.C. § 6501(e)(1)(A)(ii), which contains an exception for amounts omitted from gross income that were nevertheless adequately disclosed, would apply. Accordingly, the applicable statute of limitations for the 2004 tax year assessment expired in April 2011, i.e, six years from the date the Sandovals filed their original tax return, and the Sandovals' payments in June 2008 were timely.

### C. The 2008 Remittances Were Appropriately Considered as Tax Payments

The Sandovals further argue that the IRS improperly designated the 2008 remittances as payments, rather than deposits. Appellants' Br. 41–42. Internal Revenue Code § 6603(a) provides that a "taxpayer may make a cash deposit with the [IRS] which may be used by the [IRS] to pay any tax . . . which has not been assessed at the time of deposit. Such a deposit shall be made in such a manner as the [IRS] shall prescribe." The IRS's Revenue Procedure explains that a deposit shall be accompanied with a "written statement" designating the deposit as such, and that any undesignated remittance "will be treated as a payment and applied by the [IRS] against any outstanding liability for taxes, penalties[,] or interest." Rev. Proc. 2005-18, 2005-13 I.R.B. 798 § 4.01(1)–(2) (2005).

Prior to the adoption of the statutory definition of "deposit" in 2004,[5] courts used a test of "circumstances" to determine whether remittances were deposits or payments. In *New York Life Insurance Co. v. United States*, we adopted the circumstances test and found that, when the party reserved the right to seek return of the remittance, a remittance made under protest following a notice of deficiency was a deposit as a matter of law upon the IRS's failure to assess the deficiency within the statute of limitations. 118 F.3d 1553, 1559–60 (Fed. Cir. 1997).

The Sandovals argue that the Government is equitably estopped from applying Revenue Procedure 2005-18 and that the *New York Life* circumstances test should be used instead. Appellants' Br. 41. According to Appellants, equitable estoppel applies because the Government

---

[5]    *See* The American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 842, 118 Stat. 1418, 1598−1600.

"consistently and vehemently argued" that its November 2007 assessments were correct, which induced Appellants to remit funds they claim were not owed. *Id.* The Sandovals further argue that the 2008 remittances constitute "deposits" under the *New York Life* circumstances test. *Id.* at 40.

We find both of the Sandovals' arguments unavailing. Appellants must show "*affirmative misconduct* [as] a prerequisite for invoking equitable estoppel against the [G]overnment . . . ." *Zacharin v. United States*, 213 F.3d 1366, 1371 (Fed. Cir. 2000) (emphasis added) (citation omitted). The Sandovals have made no showing of misconduct in this case.

We agree with the Claims Court that the Sandovals "offer no evidence that their 2008 remittance[s] complied with the terms of . . . Revenue Procedure [2005-18]." *Sandoval Lua*, 123 Fed. Cl. at 277. Because the funds were received after 2004, the *New York Life* circumstances test does not apply and I.R.C. § 6603 controls. The remittances accompanied amended tax returns with tax liabilities in excess of $96,000, which followed a November 2007 deficiency assessment. SA 58−59 (cover letter acknowledging amended tax liabilities for 2003 and 2004 totaling $96,446.63). Their accompanying letter requested that the IRS apply the payments to outstanding tax liabilities for 2003 and 2004 fiscal years and any additional years with liability in the event of overpayment. SA 58. The letter did not designate the remittances as deposits, as Revenue Procedure 2005-18 requires. They were tax payments, not deposits.

## D. The Sandovals Waived Their Additional Arguments

The Sandovals contest the Claims Court's rejection of two additional arguments that (1) satellite reimbursements (from Mr. Sandoval's occupation as a satellite dish installer) cannot constitute "income" as defined by statute, Appellants' Br. 41; and (2) the Form 4549 was signed

under duress, *id.* at 38–39. We agree with the Claims Court that the Sandovals waived these arguments under the substantial variance rule.

Internal Revenue Code § 7422(a) provides that, to bring suit against the United States for the recovery of income taxes, a taxpayer must have timely filed a refund claim in the manner prescribed by regulation. Treasury Regulation § 301.6402-2(b)(1) specifies that refunds will only be granted on one or more of the grounds set forth in a timely-filed claim and that the claim "must set forth in detail each ground upon which a credit or a refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof."

We have interpreted this statute and regulation as stating a "substantial variance" rule that bars taxpayers from bringing new claims or facts not alleged in the refund application to a court in which suit for refund is sought. *See Cencast Servs., L.P. v. United States*, 729 F.3d 1352, 1366 (Fed. Cir. 2013); *see also Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000) (explaining background and reasoning behind the "substantial variance" rule). For a theory, claim, or fact supporting the application for refund to be admissible in a suit, we ask "whether there [wa]s a substantial variance from a timely filed claim." *Computervision Corp. v. United States*, 445 F.3d 1355, 1364 n.8 (Fed. Cir. 2006) (citation omitted).

We agree with the Claims Court that, having failed to argue that the satellite reimbursements were not income or that they signed Form 4549 under duress in the initial refund application, the Sandovals' introduction of these arguments would be a "substantial variance" from the initial claims. *Sandoval Lua*, 123 Fed. Cl. at 274 n.12. Therefore, these arguments were waived and were appropriately not considered.

CONCLUSION

We have considered the Sandovals' remaining arguments and find them unpersuasive. Accordingly, the decision of the U.S. Court of Federal Claims is

**AFFIRMED**