SIERRA PACIFIC RESOURCES AND SUBSIDIARIES, Successor to Nevada Power Company and Subsidiaries, Plaintiff,

v.

UNITED STATES, Defendant.

No. 01–482T.

United States Court of Federal Claims.

Nov. 21, 2002.

Joseph M. Persinger, Milbank, Tweed, Hadley & McCloy LLP, New York City, for plaintiff.

Rozella A. Oliver, Tax Division, Mildred L. Seidman, Chief, Court of Federal Claims Section, Eileen J. O'Connor, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.

## OPINION

HORN, Judge.

Sierra Pacific Resources and Subsidiaries (Sierra Pacific), a Nevada Corporation, became the successor in interest to the Nevada Power Company and Subsidiaries (Nevada Power) following a merger on July 28, 1999. Sierra Pacific has brought this action against the United States to recover deficiency interest plaintiff claims was overassessed as a result of an alleged erroneous methodology utilized by the Internal Revenue Service (IRS) for the calculation of deficiency interest on Nevada Power's 1988 net federal tax liabilities. Sierra Pacific alleges the IRS erroneously began assessing deficiency interest on March 15, 1989, when the correct start date for the assessment of deficiency interest should have been March 15, 1990, the due date of the 1989 taxes. The United States asserts that this court lacks subject matter jurisdiction because of a failure by Sierra Pacific to file a proper administrative claim for the refund of the allegedly erroneously calculated deficiency interest with the IRS within the period prescribed by the applicable statute of limitations. Plaintiff responds by contending that: (1) Nevada Power's 1991 1120X and 1992 870–AD forms set forth a sufficient basis for the present proceeding; (2) a waiver by the IRS of its own regulations should allow this suit to proceed; and (3) a

Claim Letter filed in 1998 was a proper amendment to Nevada Power's 1991 1120X and 1992 870–AD forms, and, therefore, the 1998 Claim Letter should serve as a duly filed administrative claim on which the present suit may proceed. For the reasons discussed below, the court finds that plaintiff failed to file a timely and sufficient administrative claim on which to base the present suit and, therefore, the court should grant the government's motion to dismiss the complaint for lack of subject matter jurisdiction.

## FINDINGS OF FACT

Nevada Power filed a federal corporate income tax return on September 19, 1989, for its 1988 tax year. Nevada Power's tax return calculated an $11,472,703.00 assessment of tax for its 1988 tax year. Prior to this assessment, according to the Certificate of Assessments, Payments, and Other Specified Matters, Nevada Power had made four estimated tax payments totaling $11,995,000.00. In addition, on March 15, 1988, an overpaid credit from the prior tax period in the amount of $1,426,334.00 was credited to Nevada Power's 1988 tax account, along with a $65,867.00 credit for federal tax on fuels. As a consequence of the estimated tax payments and credits, Nevada Power's tax account balance was $13,491,201.00. After payment of the $11,472,703.00 1988 tax assessment, Nevada Power's 1988 tax account retained a balance of $2,018,498.00. Nevada Power elected to transfer the remaining 1988 tax account funds to its next tax period to serve as a credit against its 1989 federal income tax liabilities.

A subsequent audit of Nevada Power's 1988 tax year (the 1991 Audit) was conducted by the IRS. IRS Form 4549, entitled "Income Tax Examination Changes," which reflected the income tax examination changes from the audit, was acknowledged by the signature of the Vice–President, Treasurer, and Chief Financial Officer of Nevada Power, on June 25, 1991, following the words:

Consent to Assessment and Collection—I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, I give

my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus any interest as provided by law. It is understood that this report is subject to acceptance by the District Director.

The resultant assessment determined by the IRS, and consented to by Nevada Power, was $964,885.00 in deficiency tax and $278,217.00 in deficiency interest for Nevada Power's 1988 tax year. The Form 4549, signed by the Chief Financial Officer of Nevada Power, indicates that the assessment of the deficiency tax and interest was due to, among other items, changes in the taxable income from "Heat Pump Rebates," "Genwal Stock Purchase," and "Legal Expenses— Genwal Stock." The deficiency tax and deficiency interest assessments, totaling $1,243,102.00, were posted to Nevada Power's tax account on April 6, 1992, but were discharged by Nevada Power with an advanced payment of $1,243,102.00 made on June 25, 1991.

On September 30, 1991, Nevada Power filed an amended 1988 income tax return by submitting Form 1120X, entitled "Amended U.S. Corporation Income Tax Return," to the IRS. Instructions for Form 1120X indicate that the "IRS will figure any interest due and will either include it in the refund or bill the corporation for the interest." The Form 1120X submitted by Nevada Power did not make a specific claim for a refund of interest, and Sierra Pacific acknowledges that no such specific claim was made on this form. In Part II of Form 1120X, the taxpayer is instructed to provide the basis for the amendments to the original tax return and is instructed to "[e]nter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail." Nevada Power provided two reasons for its changes: "Lines 1, 2 + 3 change in method of accounting for customer deposits (Rev.Proc. 91–31) See Attachment # 2" and "Line 4 change in tax due to change in income See Schedule J."

On December 9, 1992, Nevada Power and the IRS executed Form 870–AD, entitled "Offer of Waiver of Restrictions on Assess-

ment and Collection of Deficiency in Tax and Acceptance of Overassessment," for the 1988 tax year. Form 870–AD states that the parties "consent to the assessment and collection of the following deficiencies with interest as provided by law. The undersigned offers also to accept the following overassessments as correct." The form indicates that Nevada Power had been overassessed $40,088.00 in taxes for the 1988 tax year. This amount was abated in Nevada Power's 1988 tax account on February 1, 1993, as was $11,557.37, the corresponding amount of previously assessed deficiency interest applicable to the overassessed taxes of $40,088.00, as calculated by the IRS. On February 1, 1993, the IRS simultaneously credited "interest due taxpayer," in the amounts of $3,250.81 and $2,961.89, and issued a refund of $29,373.48. The only other activity in the 1988 tax account was a subsequent credit of interest and an issuance of a refund on May 10, 1993, in the amounts of $4,164.41 and $32,649.00, respectively. The net result of these transactions was a zero-balance on May 10, 1993. For more than five years following the refund on May 10, 1993, no activity in the 1988 tax account is noted on the Certificate of Assessments, Payments, and Other Specified Matters.

On August 7, 1998, Nevada Power submitted a letter (the 1998 Claim Letter) to the IRS, petitioning for an adjustment to its 1988 tax year account. In the 1998 Claim Letter, Nevada Power asserted for the first time that the deficiency interest posted to its 1988 tax account on April 6, 1992 (the $278,217.00 in deficiency interest assessed as a result of the 1991 Audit), and the abatement posted to the 1988 tax account on February 1, 1993 (the $11,557.37 abatement of deficiency interest associated with the 870–AD form), were erroneously calculated due to the use of an incorrect starting date for the assessment of deficiency interest. Nevada Power contended that the starting date for the assessment of deficiency interest was erroneous because the $2,018,498.00 balance in its 1988 tax account that it elected to credit to its 1989 tax account was not needed to meet the 1989 estimated tax payment, and "pursuant to (1) the decisions in the cases *May Department*

Stores [*May Department Stores v. United States*, 36 Fed.Cl. 680 (1996)] and *Sequa* [*Sequa v. United States*, 1996 WL 194323 (S.D.N.Y. April 22, 1996)] and (2) the benefit rule of Rev. Rul. 88–98, interest should have started on March 15, 1990, the due date of the 89/12 tax return."

The IRS disallowed Nevada Power's claim in a letter dated August 19, 1998, stating "[w]e cannot allow a claim for credit or refund if you file the claim more than 3 years after you file the return, or 2 years after you pay the tax, whichever is later."

Plaintiff requested reconsideration of the IRS's disallowance regarding its 1998 Claim Letter in correspondence November 2, 1999. Plaintiff claimed that the 1120X and 870–AD forms were timely filed claims for deficiency interest, the 1998 Claim Letter properly amended these claims, and that, therefore, Nevada Power was entitled to a refund of the deficiency interest that was allegedly improperly assessed. There is no indication in the record of any response to this letter. The IRS and Nevada Power subsequently executed Form 907, entitled "Agreement to Extend the Time to Bring Suit," which indicated that Nevada Power could file suit on or before August 19, 2001, regarding the IRS's disallowance of Nevada Power's claim for $208,315.00 on August 19, 1998.

On August 17, 2001, Sierra Pacific filed a complaint with the United States Court of Federal Claims initiating the present suit against the United States. Sierra Pacific seeks to recover $242,309.26, together with interest.

## DISCUSSION

Subject matter jurisdiction may be challenged at any time by the parties, by the court sua sponte, even on appeal. *Fanning, Phillips, Molnar v. West*, 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (1993)); *United States v. Newport News Shipbuilding & Dry Dock Co.*, 933 F.2d 996, 998 n. 1 (Fed.Cir.1991). Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178,

189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998); *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1324 (Fed.Cir.1997); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991); *Bowen v. United States*, 49 Fed.Cl. 673, 675 (2001) (noting that the plaintiff bears the burden of proof on a motion to dismiss for lack of jurisdiction), *aff'd* 292 F.3d 1383 (Fed.Cir. 2002); *Schweiger Constr. Co. v. United States*, 49 Fed.Cl. 188, 205 (2001); *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404 (1994). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch., Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *Martinez v. United States*, 48 Fed.Cl. 851, 857 (2001), *aff'd in part*, 281 F.3d 1376 (Fed.Cir.2002); *Bowen v. United States*, 49 Fed.Cl. at 675; *Vanalco, Inc. v. United States*, 48 Fed.Cl. 68, 73 (2000); *Alaska v. United States*, 32 Fed. Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed.Cir.1996) (table). When construing the pleadings pursuant to a motion to dismiss, the court should grant the motion only if "it appears beyond doubt that [plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Consolidated Edison Co. v. O'Leary*, 117 F.3d 538, 542 (Fed.Cir.1997), *cert. denied sub nom. Consolidated Edison Co. v. Pena*, 522 U.S. 1108, 118 S.Ct. 1036, 140 L.Ed.2d 103 (1998); *see also New Valley Corp. v. United States*, 119 F.3d 1576, 1579 (Fed.Cir.), *reh'g denied, en banc suggestion declined,* (1997); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States*, 48 F.3d 1166, 1169 (Fed.Cir.), *cert. denied,* 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *W.R. Cooper Gen., Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion must be denied.'"); *RCS Enters., Inc. v. United States*, 46 Fed.Cl. 509, 513 (2000).

Pursuant to Rule 8(a)(1) of the Rules of the Court of Federal Claims (RCFC) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.), *reh'g denied* (1997) (citing *Franchise Tax Bd. v. Constr., Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *see also Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir.1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding on a motion to dismiss based on lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. 99; *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir.2000); *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir. 1998); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States,* 48 F.3d at 1167 (citing *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991)); *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir. 1995); *Hamlet v. United States,* 873 F.2d at 1416; *Ho v. United States,* 49 Fed.Cl. 96, 100 (2001), *aff'd,* 30 Fed.Appx. 964 (Fed.Cir. 2002); *Alaska v. United States,* 32 Fed.Cl. at 695. If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. at 189, 56 S.Ct. 780; *see also Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 747; *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. at 404–05. When considering a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to resolve any factual disputes. *See Moyer v. United States,* 190 F.3d 1314, 1318 (Fed.Cir.1999); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 747; *see also Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1584 (Fed.Cir. 1993), *cert. denied sub nom., Cedars–Sinai Med. Ctr. v. O'Leary,* 512 U.S. 1235, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994) ("In establishing predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony."); *Vanalco v. United States,* 48 Fed.Cl. at 73 ("If the truth of the alleged jurisdictional facts is challenged in a motion to dismiss, the court may consider relevant evidence to resolve the factual dispute.").

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C. § 1491 (1994). The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) for a refund from a prior payment made to the government; or (3) based on federal constitutional, or statutory, or regulatory law mandating compensa-

tion by the federal government for damages sustained. *See United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), *reh'g denied,* 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States,* 33 Fed.Cl. 474, 478 (1995), *aff'd,* 79 F.3d 136 (Fed.Cir. 1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." *INS v. St. Cyr,* 533 U.S. 289, 299 n. 10, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Ins. Co. of the West v. United States,* 243 F.3d 1367, 1372 (Fed. Cir.), *reh'g* and *reh'g en banc denied* (2001); *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir.1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims, " 'it does not create any substantive right enforceable against the United States for money damages.' " *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (quoting *United States v. Testan,* 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *White Mountain Apache Tribe v. United States,* 249 F.3d 1364, 1372 (Fed.Cir.), *reh'g* and *reh'g en banc denied* (2001), *cert. granted,* 535 U.S. 1016, 122 S.Ct. 1604, 152 L.Ed.2d 619 (2002); *Cyprus Amax Coal Co. v. United States,* 205 F.3d 1369, 1373 (Fed.Cir.2000); *cert. denied,* 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1555–56 (Fed.Cir. 1997), *cert. denied,* 523 U.S. 1094, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.' " *White Mountain Apache Tribe v. United States,* 249 F.3d at 1372 (quoting *United States v. Mitchell,* 463 U.S. 206, 216–17 (1983)); *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948; *Tippett v. United States,* 185 F.3d 1250, 1254 (Fed.Cir.1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.") (quoting *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998), *reh'g denied* (1999)); *Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir. 1996), *reh'g denied, en banc suggestion declined* (1997); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009.

Prior to maintaining a suit to recover improperly assessed taxes or interest, a taxpayer must satisfy the statutory prerequisite of filing an administrative claim with the IRS. *See* 26 U.S.C. § 7422(a). The administrative claim must comport with both "the provisions of law ... and the regulations of the [IRS]." *Id.* For a claim to be properly before the court, it must be filed in compliance with the statute of limitations codified at 26 U.S.C. § 6511(a). *United States v. Dalm,* 494 U.S. 596, 602, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). In relevant part, Section 6511(a) requires that any

> [c]laim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later.

26 U.S.C. 6511(a).

Failure to comply with § 6511(a) results in the absence of jurisdiction for the court to resolve the claim on the merits, and the suit must be dismissed pursuant to Rule 12(b)(1) of the United States Court of Federal Claims for want of subject matter jurisdiction.

*United States v. Dalm,* 494 U.S. at 602; 110 S.Ct. 1361.

Treasury Regulation § 301.6402–2 similarly restricts the allowance of refunds to claims that have been filed prior to the expiration of the statute of limitations. 26 C.F.R. § 301.6402–2. In addition, § 301.6402–2 requires that claims for refund "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." 26 C.F.R. § 301.6402–2(b)(1).

As the United States Court of Claims stated in *Alexander Proudfoot Company v. United States,* the requirement for filing an adequate refund claim:

> is designed both to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination. In addition, the Commissioner is provided with an opportunity to correct any errors, and if disagreement remains, to limit the scope of any ensuing litigation to those issues which have been examined and which he is willing to defend.

197 Ct.Cl. 219, 227, 454 F.2d 1379, 1383 (1972) (citation omitted) (quoting *Union Pac. R.R. v. United States,* 182 Ct.Cl. 103, 109, 389 F.2d 437, 442 (1968)).

■ In *Lockheed Martin Corporation v. United States,* the United States Court of Appeals for the Federal Circuit noted that 26 U.S.C. § 7422(a) and 26 C.F.R. § 301.6402–2(b)(1) have long been recognized to prevent a taxpayer from substantially varying the legal or the factual basis of an administrative claim when before a court. *Lockheed Martin Corp. v. United States,* 210 F.3d 1366, 1371 (Fed.Cir.2000) ("Courts have long interpreted § 7422(a) and Treasury Reg. § 301.6402–2(b)(1) as stating a 'substantial variance' rule which bars a taxpayer from presenting claims in a tax refund suit that 'substantially vary' the legal theories and factual bases set forth in the tax refund claim presented to the IRS."). This principle, referred to as the "substantial variance rule," ensures that the IRS has "notice as to the nature of the claim and the specific facts upon which it is predi-

cated," ensures that the IRS has "an opportunity to correct errors," and "limits any subsequent litigation to those grounds that the IRS had an opportunity to consider and is willing to defend." *Lockheed Martin Corp. v. United States,* 210 F.3d at 1371 (Fed.Cir.2000).

■ Sierra Pacific contends that the 1120X form filed on September 30, 1991, and the 870–AD form filed on December 9, 1992, by Nevada Power for its 1988 tax year, were sufficient to notify the IRS of Sierra Pacific's current claim and invoke this court's jurisdiction. Nevada Power submitted the 1120X form as an amendment to its 1988 tax return. It specifically requested the IRS to adjust its tax liabilities for the 1988 tax year, due to a "change in method of accounting for customer deposits" and a "change in tax due to change in income." The 1120X form also reflected changes stemming from an audit made several months prior that modified tax liabilities as a result of, among other items, changes in the taxable income from "Heat Pump Rebates," "Genwal Stock Purchase," and "Legal Expenses—Genwal Stock." These were the specific items Nevada Power addressed in the 1120X form for consideration by the IRS. On the 1120X form, Nevada Power did not address Sierra Pacific's current allegation that the IRS was utilizing an erroneous methodology for the calculation of deficiency interest, namely, the use of an incorrect starting date for the assessment of deficiency interest. Nevada Power made no mention of any legal theory remotely similar to what Sierra Pacific now claims before this court. In fact, there is no suggestion on the 1120X form that Nevada Power was alleging any error whatsoever on the part of the IRS. The IRS Commissioner is "entitled to take [the claim] at face value and to examine only the points to which it directed his attention." *United States v. Garbutt Oil Co.,* 302 U.S. 528, 533, 58 S.Ct. 320, 82 L.Ed. 405 (1938). Sierra Pacific's present claim that the IRS utilized an erroneous method of calculating deficiency interest, therefore, substantially varies from the 1120X submitted in 1991.

This finding of substantial variance is consistent with a similar issue recently consid-

ered by the United States Court of Federal Claims in *Mobil Corporation v. United States,* 52 Fed.Cl. 327 (2002). In *Mobil,* the court considered whether the filing of a Form 1120X provided adequate notice for the recovery of interest that was allegedly improperly assessed as a result of a computational error. *Id.* at 333. Although the taxpayer in *Mobil* may have been entitled to the deficiency interest directly associated with the amount of the refund itself, the court determined that the portion sought as a result of an "alleged miscalculation is based on a separate legal theory that plaintiff was obligated to disclose in its claim." *Id.* Similar to the plaintiff in *Mobil,* Sierra Pacific did not disclose the separate legal theory that the IRS was utilizing a potentially erroneous methodology in the calculation of deficiency interest.

The same conclusion must be drawn in regard to the 870–AD form. The 870–AD form was an agreement between Nevada Power and the IRS acknowledging that Nevada Power had been overassessed $40,088.00 in taxes. Accompanying the 870–AD form was Form 4549, entitled "Income Tax Examination Changes," which shows that the $40,088.00 was the difference between the "Total Tax per Return," the $12,437,588.00 in tax that was indicated on Nevada Power's original 1988 tax return, and the "Total Corrected Tax Liability," $12,397,500.00. The "Corrected Tax Liability" is shown on the Form 4549 to be a result of adjustments to income. The 870–AD form did not address a claim for deficiency interest assessed for Nevada Power's 1988 tax year beyond that which may be directly associated with the $40,088.00, and did not address a claim that the IRS was employing an erroneous methodology for the calculation of deficiency interest, specifically, an erroneous starting date. Therefore, the claim Nevada Power asserted in the 870–AD substantially varies from Sierra Pacific's current claims.

In *Burlington Northern Inc. v. United States,* the United States Court of Claims noted that "[a]ny ground for refund not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subse-

quently initiated." *Burlington N. Inc. v. United States,* 231 Ct.Cl. 222, 225, 684 F.2d 866, 868 (1982). Neither the Form 1120X, filed in 1991, nor the Form 870–AD, filed in 1992, mentions any legal or factual theory remotely similar to what Sierra Pacific now claims, that an erroneous start date was utilized for the assessment of deficiency interest. Indeed, no suggestion, neither "expressly" nor "impliedly," was made on the 870–AD that any error whatsoever was made on the part of the IRS. *Id.* Because the claim that the IRS was utilizing an erroneous method for the calculation of deficiency interest was "not expressly or impliedly contained in" Form 1120X or Form 870–AD, which Sierra Pacific categorizes in its opposition to the United States' motion to dismiss as the claims for refund filed in 1991 and 1992, and which Sierra Pacific alleges "set forth the basis for the instant proceeding," neither may serve as a basis for the present suit. *See Lockheed Martin Corp. v. United States,* 210 F.3d at 1371.

Although the United States alleges in its brief submitted to this court that "[w]here deficiency interest is to be refunded only because the underlying tax deficiency to which it relates is to be refunded, then no specific claim for refund of the interest is necessary," that does not resolve the issues presented by this case. It has been stated that "deficiency interest has been so closely braided to principal that it has been deemed an integral part of the tax." *Alexander Proudfoot Co. v. United States,* 197 Ct.Cl. at 226, 454 F.2d at 1382. Implicit in Forms 1120X and 870–AD, therefore, is a request for deficiency interest. *Deluxe Check Printers, Inc. v. United States,* 15 Cl.Ct. 175, 182 (1988), *aff'd in part and rev'd in part on other grounds sub nom. Deluxe Corp. v. United States,* 885 F.2d 848 (Fed.Cir.1989). That particular request for deficiency interest was granted by the IRS's subsequent credit of $11,557.37 in deficiency interest that the IRS associated with the $40,088.00 deficiency tax refund. Although it is true that implicit in Form 1120X and Form 870–AD is a request for directly related deficiency interest, it is only that interest "tied entirely to the lawfulness of the principal tax," not the lawfulness of the method for calculating defi-

ciency interest. *John B. Lambert & Assocs. v. United States*, 212 Ct.Cl. 71, 87, 1986 WL 22198 (1976) (a case in which the interest claim was not tied to the lawfulness of the principal tax, but an independent claim for pre-notice interest, which, therefore, was "clearly not presented.") Sierra Pacific's present claim that the IRS erroneously calculated deficiency interest by utilizing an incorrect starting date for the assessment was not "tied entirely to the lawfulness of the principal tax," and goes beyond the deficiency interest that may have been implicitly claimed in the Form 1120X and Form 870–AD. *See id.* As the court stated in *Mobil Corp.*,

> Defendant acknowledges that plaintiff asked for interest on the taxes that it overpaid in its original claim, and generally cases hold that interest is a component of the refund. Now, however, the plaintiff contests the *method* that IRS used to calculate the amount of interest that plaintiff owed. Even if IRS mistakenly did not calculate interest using normal administrative procedures, contesting the method of calculation was a new claim. Plaintiff was required to bring that error to the Commissioner's attention.

*Mobil Corp. v. United States*, 52 Fed.Cl. at 329 (emphasis in original).

Both the 1120X and 870–AD forms were specific in nature, seeking IRS action on theories wholly unrelated to Sierra Pacific's present claim for deficiency interest. Neither of the forms makes any mention of an improper start date used by the IRS in its calculation of deficiency interest. The forms cannot, therefore, be fairly viewed as "set[ting] forth in detail each ground upon which" Sierra Pacific now claims a refund, nor can they be fairly viewed, as required, as "sufficient to apprise the Commissioner of the exact basis thereof." *See* 26 C.F.R. § 301.6402–2(b)(1).

The IRS regulations also require that "the taxpayer submit with its tax refund claim the supporting evidence necessary to prove its claim." *Lockheed Martin Corp. v. United States*, 210 F.3d at 1371; *see also* 26 C.F.R. § 301.6402–2. Neither the Form 1120X nor the Form 870–AD submitted to the IRS by Nevada Power provides the evidence necessary to support and prove that the IRS utilized an erroneous date to calculate deficiency interest. *Id.* No reference was made by Nevada Power in either Form to facts, revenue rulings, the IRS's manual, or case law to support the notion that some error had been made by the IRS in its method of calculating the deficiency interest at issue.

Upon consideration of the facts and circumstances surrounding the 1120X and 870–AD forms submitted by Nevada Power, it is evident that Form 1120X and Form 870–AD could not provide the IRS: (1) "notice as to the nature of the claim and the specific facts upon which it is predicated;" (2) "an opportunity to correct errors" presently asserted by Sierra Pacific; (3) nor would they "limit[ ] any subsequent litigation to those grounds that the IRS had an opportunity to consider and is willing to defend." *Lockheed Martin Corp.*, 210 F.3d at 1371. The 1120X and the 870–AD claims filed by Nevada Power in 1991 and 1992 "substantially vary" from the present claim before the court, fail to "expressly or impliedly" contain a claim that the IRS utilized an erroneous date for the calculation of deficiency interest, and do not set forth "the supporting evidence necessary to prove its claim" that an erroneous method of calculation was used. Therefore, the 1120X and 870–AD forms submitted by Nevada Power for its 1988 tax year cannot serve as a basis for the present refund claim in this court.

Sierra Pacific makes an alternative claim that if the 1120X and 870–AD forms are in themselves insufficient to provide a basis for the present suit, the IRS may have waived its own "Regulation." This assertion appears in only one sentence of Sierra Pacific's brief. Sierra Pacific has not specified the basis of this assertion nor has it indicated which regulation has been allegedly waived. The "Regulation" presumably refers to 26 C.F.R. § 301.6402–2(b)(1), which provides that a taxpayer must "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." 26 C.F.R. § 301.6402–2(b)(1).

The Supreme Court, in *United States v. Andrews*, addressed the waiver of IRS regulations governing specificity of claims. *United States v. Andrews*, 302 U.S. 517, 525, 58 S.Ct. 315, 82 L.Ed. 398 (1938). In *Andrews*, the Supreme Court indicated that where a specific claim, not a general claim, was filed with the IRS, which "pointed unerringly to the items the Commissioner must consider," no waiver of the regulation requiring specificity is implicated. *Id.*

The 1120X and 870–AD forms submitted by Nevada Power were both specific in their purpose and pointed clearly to the items the IRS was asked to consider by Nevada Power. The 1120X form, submitted by Nevada Power to amend its 1988 tax return, stated the grounds for its amendments as a "change in [the] method of accounting for customer deposits" and a "change in tax due to change in income." The 870–AD form was an agreement indicating that Nevada Power was overassessed $40,088.00, which, as indicated in the associated Form 4549, was due to adjustments by Nevada Power to its taxable income, for items such as, "Legal—Amended Articles," "Legal—Diversification Study," and "Amended Returns—Customer Deposits." Neither of the forms suggests that the IRS was asked to reconsider the date used to calculate the deficiency tax. Rather, both forms clearly indicate the specific items Nevada Power presented for consideration by the IRS. The forms did not raise the attention of the IRS to the claims now before the court, which were asserted for the first time in the 1998 Claim Letter sent to the IRS. The IRS Commissioner did not waive the requirement to provide the specific grounds and factual details in support of Nevada Power's refund claim, which "pointed unerringly to the items the Commissioner must consider," for "[t]here was no need for him to do so." *Id.*

■ No argument has been made that the 1998 Claim Letter would be independently sufficient to maintain the present suit. A new claim brought in 1998, being more than three years after the filing of the 1988 tax return on September 19, 1989, and more than two years after the most recent payment of the 1988 taxes on June 25, 1991, would clearly be untimely under the statute of limitations found at 26 U.S.C. § 6511(a). Rather, Sierra Pacific contends that the 1998 Claim Letter was an amendment or clarification to its earlier claims embodied in the 1120X and 870–AD forms.

In *United States v. Andrews*, the Supreme Court clarified the requirements imposed upon a filing so that it might be considered an amendment to a prior administrative claim and stated the following:

> Where a claim which the Commissioner could have rejected as too general, and as omitting to specify the matters needing investigation, has not misled him but has been the basis of an investigation which disclosed facts necessary to his action in making a refund, an amendment which merely makes more definite the matters already within his knowledge, or which, in the course of his investigation, he would naturally have ascertained, is permissible. On the other hand, a claim which demands relief upon one asserted fact situation, and asks an investigation of the elements appropriate to the requested relief, cannot be amended to discard that basis and invoke action requiring examination of other matters not germane to the first claim.

*United States v. Andrews*, 302 U.S. at 524, 58 S.Ct. 315. Similarly, in *Consolidated Coppermines Corporation v. United States*, the United States Court of Claims stated,

> [w]here the amendment is inconsistent with the former claim, or has injected new and unrelated matter, we have not allowed it, but where it is germane to the original claim and sets up matter discovered in the course of the investigation of the original one, we have allowed it.

*Consol. Coppermines Corp. v. United States*, 155 Ct.Cl. 731, 736, 296 F.2d 743 (1961).

Sierra Pacific contends that the 1998 Claim Letter is a proper amendment to the 1120X and 870–AD forms, filed in 1991 and 1992, respectively. Nevada Power's 1998 Claim Letter, filed after the expiration of the applicable statute of limitations, should not be characterized as a proper amendment to either the 1120X or the 870–AD forms. The 1998 Claim Letter raises a new and indepen-

dent claim asserting grounds for a refund that had until then never been made known to the IRS, namely, that the IRS had utilized an erroneous method for the calculation of deficiency interest. The 1120X and 870–AD forms filed by Nevada Power were based on specific changes, including changes in the taxable income identified in the 1120X form and the 4549 form that accompanied the 870–AD, such as: "Heat Pump Rebates," "Genwal Stock Purchase," and "Legal Expenses—Genwal Stock," a "change in method of accounting for customer deposits," and a "change in tax due to change in income." Although implicit in these tax claims is a claim for deficiency interest associated with the changes in tax, Nevada Power made no assertion that the IRS was utilizing an erroneous date for the calculation of deficiency interest. As has already been discussed, nothing on either the 1120X or the 870–AD forms, nor within any of the other documents presented to the court, demonstrates that the IRS was given notice of such a date miscalculation claim at any time prior to the submission of the 1998 Claim Letter to the IRS.

The 1998 Claim Letter did not clarify any grounds for a refund claim already present in either the 1120X or 870–AD forms, nor did it "make[ ] more definite the matters already within [the] knowledge [of the IRS]." *United States v. Andrews*, 302 U.S. at 524, 58 S.Ct. 315. For the first time in the 1998 Claim Letter, Nevada Power called for the IRS to reevaluate the method by which the IRS had assessed deficiency interest for Nevada Power's 1988 tax year. This was an "action requiring examination of other matters not germane" to the items presented by Nevada Power in the 1120X and 870–AD forms. *Id.* As the Supreme Court indicated in *United States v. Andrews*, it is an untenable position that "a claim limited to a specified item might be amended out of time to seek a refund on account of other and unrelated items." *Id.* at 527, 58 S.Ct. 315.

Sierra Pacific cites to the Claims Court's decision in *Deluxe Check Printers, Inc. v. United States* and the Eleventh Circuit decision in *Mutual Assurance, Inc. v. United States* to attempt to support the proposition that it is entitled to the deficiency interest presently sought. *Deluxe Check Printers, Inc. v. United States*, 15 Cl.Ct. 175 (1988), *rev'd in part on other grounds sub. nom Deluxe Corp. v. United States*, 885 F.2d 848 (Fed.Cir.1989); *Mut. Assurance, Inc. v. United States*, 56 F.3d 1353 (11th Cir.1995). Sierra Pacific's reliance upon *Deluxe Check* and *Mutual Assurance* is unconvincing. In *Deluxe Check*, the court characterized the issue as "whether, in light of the totality of the facts and circumstances surrounding the refund claim(s) . . . the IRS had actual or constructive notice of the nature of plaintiff's claim for the interest erroneously assessed." *Id.* at 180. The court indicated that each case is dependent on the specific facts presented. *Id.* This court agrees with the fact specific nature of variance tax cases. In the case before this court, however, no assertion has been made by Sierra Pacific that the IRS had actual notice of the alleged error in the method of calculation of interest. As discussed above, nothing in the Form 870–AD or the Form 1120X gave notice to the IRS of Sierra Pacific's current allegation that the IRS was employing an incorrect starting date for the calculation of deficiency interest. These facts distinguish the present case from both *Deluxe Check* and *Mutual Assurance*. *See United States v. Garbutt Oil Co.*, 302 U.S. at 533, 58 S.Ct. 320 ("The claim being thus specific, the Commissioner was entitled to take it at face value and to examine only the points to which it directed his attention."). Nevada Power's claim for deficiency interest in its 1998 Claim Letter was for deficiency interest based on a different legal theory, and went beyond the claim for interest associated with the underlying tax sought in the 1120X and 870–AD Forms. The specific assertion that these forms provided notice to the IRS of an erroneous starting date for the calculation of deficiency interest cannot reasonably be drawn from the documents Nevada Power submitted to the IRS.

■ The characterization of the 1998 Claim Letter as an amendment to the Form 1120X or Form 870–AD should also be rejected because the Form 1120X and Form 870–AD claims were no longer pending and the statute of limitations had expired at the time the 1998 Claim Letter was submitted. An amendment to a refund claim submitted

after the expiration of the applicable statute of limitations may only be made if the original claim is still pending. *See Allstate Ins. v. United States,* 213 Ct.Cl. 96, 104, 550 F.2d 629, 633 (1977) ("It is a rule of long standing that once a refund claim has been disallowed, it is not subject to amendment."); *see also Union Pac. R.R. Co. v. United States,* 182 Ct.Cl. 103, 116–17, 389 F.2d 437, 447 (1968) ("The disposition of a taxpayer's refund claim by allowance of the amount requested in full, however, precludes an amendment asserting an additional amount after the expiration of the statutory period for refund."). Absent such a principle, a taxpayer would be permitted to amend any refund claim in perpetuity. *See Mut. Life Ins., Co. of N.Y. v. United States,* 72 Ct.Cl. 204, 49 F.2d 662, 664, *cert. denied,* 284 U.S. 628, 52 S.Ct. 12, 76 L.Ed. 535 (1931) ("A claim that has been rejected may not be amended after the statute of limitation has expired. *Sugar Land Railway Co. v. United States,* 48 F.2d 973 [71 Ct.Cl. 628], decided April 6, 1931, by this court. To hold that a claim for refund made on a specific ground may, after it has been considered and rejected, be amended or enlarged so as to include an entirely different ground ... would be to permit an indefinite postponement of the limitation for bringing suit and would nullify the provisions of the statute as to the time within which claims may be filed and the time within which suit may be brought."); *Mobil Corp. v. United States,* 52 Fed.Cl. at 336.

Sierra Pacific argues that its 1998 Claim Letter should be understood as an amendment of the 1991 1120X and 1992 870–AD forms. From an examination of the activity relating to the Nevada Power's 1988 tax account, it is clear that neither the Form 1120X nor the Form 870–AD claims were pending at the time Nevada Power submitted its 1998 Claim Letter. In fact, the record indicates that both of these claims had been resolved by the IRS more than five years prior to the 1998 Claim Letter.

The Certificate of Assessments, Payments, and Other Specified Matters for Nevada Power's 1988 tax account indicates that on February 2, 1993, the IRS abated the $40,088.00 in overassessed taxes, as indicated on the 870–AD form, and $11,557.37 in inter-est, the corresponding amount of interest associated with the $40,088, on Nevada Power's 1988 tax account. The IRS simultaneously credited "interest due taxpayer," and issued a refund of $29,373.48. The only subsequent activity in the 1988 account was a credit of interest and an issuance of refunds on May 10, 1993, in the amounts of $4,164.41 and $32,649.00, respectively. The result of these transactions was a zero-balance in the 1988 tax account on May 10, 1993. For more than five years after the issuance of the final refund, no activity is shown in the 1988 tax account. It is evident that the IRS had long completed its evaluation of both the Form 1120X and Form 870–AD, as shown through the issuance of a refund that created a zero-balance in the 1988 tax account in 1993, followed by five years of inactivity. Once the IRS concluded its evaluation of the Form 1120X and Form 870–AD, and the statute of limitations had expired, the forms were no longer subject to amendment.

### CONCLUSION

Nevada Power's failure to file a proper administrative claim within the statutorily mandated time period precludes this court from exercising jurisdiction over plaintiff's claim. Because Sierra Pacific has failed to prove that this court has jurisdiction, the motion of the United States to dismiss the complaint is **GRANTED.**

**IT IS SO ORDERED.**